# CHARLES TOWN

TALLEY *et al.* v. FERGUSON, TRUSTEE, *et al.*

Submitted March 6, 1908.   Decided September 11, 1908.

1. TRUSTS—*Rights of Beneficiaries—Alienation of Interest.*

In land conveyed to a trustee for the maintenance of a family none of the beneficiaries has any distinct or separable interest, during the existence of the trust for that purpose, which he can charge or alien.   (p. 333.)

2. Construction of Grant—*Life Estate.*

A grant to wife and children, without more, creates in the wife and children in being at the time a joint estate in equal portions but in a grant for the use and benefit of a wife and children, by its terms declaring it to be a provision for the family, any manifest indications which support reasonable construction of a life estate in the wife with remainder to the children will be followed, and that construction given, so that after-born children may take, and so that the life tenant may have sufficient income to support the children. (pp. 334, 336.)

Appeal from Circuit Court, Kanawha County.

Bill by William N. Talley and others against James H. Ferguson, trustee and others. Decree for plaintiffs, and Vicie Nighbert, administratrix, appeals.

*Affirmed.*

Payne & Payne, J. E. Chilton, and Berkeley Minor, Jr., for appellant.

D. C. Gallaher, for appellee.

Robinson, Judge:

The decree appealed from set aside and declared null and void a deed of trust and perpetually enjoined and restrained the trustee and beneficiary from enforcing the same. The land covered by the deed of trust was a valuable tract on the west side of the Kanawha, in the county of that name, and below and near the mouth of Coal. It had been conveyed, by deed dated April 20, 1867, by Rachael M. Tompkins and her children to Henry P. Tompkins, trustee, that deed reciting that the said Rachael M. Tompkins, the mother of Beverly Tompkins, and his brothers and sisters, the grantors therein, "being willing and desirous of making a settlement and provision out of their several interests and portions in said estate for the maintenance of the wife and children of the said Beverly Tompkins do hereby grant unto Henry P. Tompkins for the uses and trusts hereinafter declared," etc., with this sequent provision: "In trust that he the said Henry P. Tompkins will hold the tract of land * * * * */for the sole use and benefit of the wife and children of the said Beverly Tompkins, and free from all debts, demands or claims upon him, the said Beverly Tompkins, and upon this further trust that he the said Henry

P. Tompkins will apply the rents, issues and profits of the tract of land hereby conveyed to the use and benefit, maintenance and support of the wife and children of the said Beverly Tompkins. The deed contains this additional clause: "And it is known to the parties making this grant that the said Beverly Tompkins is embarrassed with debt, and it being their intention as before stated to make a provision for his family, the said grantors do hereby expressly declare that the property shall not in any mode or manner be subjected to or made liable for the debts of the said Beverly, either those now existing or any that may be created in the future."

Later, Henry P. Tompkins resigned this trust. An order was entered by the circuit court of the said county, appointing B. Tompkins " trustee for Sally Tompkins and her children in the place of said H. P. Tompkins; but not to take place until B. Tompkins shall give bond before the clerk of this court in the penalty of $2500, with good security approved by the clerk, conditioned according to law." There is no evidence that this bond was ever given. Beverly Tompkins, trustee, and Sallie H., his wife, petitioned said circuit court for leave to execute a deed of trust on said real estate to secure the payment of $2500. On January 7, 1882, it was adjudged, ordered and decreed "that said petitioners have leave to borrow said sum of $2500 upon the faith of said real estate and secure the payment of the said sum and its interest by deed of trust duly executed by them and each of them on said real estate so conveyed and held for the use of the said Sallie H. Tompkins as aforesaid." The children of the said Beverly and Sallie were not made parties to this proceeding, nor were they given notice thereof. Notwithstanding this, on January 30, 1882, a deed of trust on the land aforesaid was executed to James H. Ferguson, trustee, by Sallie H. Tompkins and Beverly Tompkins, "her husband and trustee," to secure to James A. Nighbert the sum of $2,000, with interest, payable two years thereafter. Beverly Tompkins signed and acknowledged this deed of trust as "trustee of Sallie H. Tompkins," and Sallie H. Tompkins acknowledges it as "the wife of Beverly Tompkins (who is also her trustee)." It is this deed of trust that has been declared null and void and the enforcement of which has been perpetually enjoined.

The case resolves itself into brief questions.   Is Nighbert's deed of trust valid?   Did Beverly Tompkins have authority as trustee to convey thereby, and did Sallie H. Tompkins have any interest that she could convey?   We may safely and at once pronounce that Beverly Tompkins had no such standing as trustee as he professed to have in the making of this deed of trust.   It is practically conceded that he had not such authority, never having given the bond required by the order appointing him.   Of equal certainty is it that any interest which the children may have had in the land aforesaid was not conveyed by the deed of trust in question. They were not parties to Nighbert's deed of trust, nor to the proceedings in court upon which it was sought to be based.   And this calls upon us to construe the grant of said land by the aforesaid deed of April 20, 1867, and to inquire as to what interests were given the wife and children by that deed.

We observe that the land was conveyed "in trust," to be held by the trustee "for the sole use and benefit of the wife and children of the said Beverly Tomkins," and "upon this further trust" that the trustee "will apply the rents, issues and profits of the tract of land conveyed to the use and benefit, maintenance and support, of the wife and children of the said Beverly Tompkins." Let us also distinctly note that the conveyance is declared to have as its intention the making of "a provision for his family," that is, the family of the said Beverly Tompkins.   And by no means let us overlook the part of this deed which must control greatly in its interpretation, that part being declaratory that the property "shall not in any mode or manner be subjected to or made liable for the debts of the said Beverly."   The foregoing provisions enlighten us as to the ownership of the land conveyed by the deed.   This was not a conveyance directly to the wife and children.   In such case, the words "wife and children" would be words of purchase, and the wife and children living at the date of the delivery of the deed would take jointly, even to the exclusion of after-born children.   It was a conveyance to a trustee for the use and benefit of a family.   And it is provided how this use and benefit shall accrue to them; that is, by the trustee's applying the rents, issues and profits of the tract of

land to the use and benefit, maintenance and support, of the wife and children. Here is the real purport of the conveyance. We see it in the words " rents, . issues and profits," " use and benefit," " maintenance and support." We see it again most clearly in the word " family." Manifestly, this deed was intended to set over the land to the family of Beverly Tompkins to be of use to them and to support and maintain his wife and children, through the instrumentality of the trustee. And yet it is insisted that Sallie H. Tompkins was by this deed vested with an equitable estate in fee in the whole of the land. This position is untenable, and can not meet our approval for a moment. To concede it would absolutely defeat the clearly expressed intention of the grantors. Yea, it would absolutely override the safeguards thrown around the property conveyed by this deed so that the same might be applied to the purposes desired by the grantors. Concede to Sallie H. Tompkins such interest in the land, or in fact any interest other than a life estate subject to the trust arrangement for the family, then we shall be inconsistent not only with the clearly expressed intention from the four corners of the paper but particularly with the defined provision that the property was granted so that it could in no mode or manner be subjected to or made liable for the debts of Beverly Tompkins. For, in case of her death, leaving him surviving, he would take by the curtesy, and his creditors would deny to the children surviving the rents, issues and profits, use and benefit, maintenance and support, or, at any rate, prevent the full operation of the trust arrangement for the family. The universal and fundamental rule of interpretation must prevail. The intention of the grantors must be sought from the plain words of the instrument and be upheld.

Denying an equitable estate in fee to Sallie H. Tompkins, as we do, then it is said that the deed vested in her and the four children in being at the time of its execution a joint estate in the land, and that Nighbert's deed of trust is a valid and subsisting lien upon her interest therein. Connected with this contention are questions presented as to the validity of the execution of the deed of trust, it being insisted that the same was signed and acknowledged by Beverly Tompkins not as husband but by Beverly Tompkins as

trustee; and that, therefore, the deed of trust is one by a married woman of her separate estate in which her husband did not join. But the view we take of the ownership of the land attempted to be bound by the deed of trust saves us the necessity of determining these questions.

Clearly, the deed aforesaid created such a trust that the beneficiaries took no interest which they could alien or anticipate. Such alienation or anticipation would obviously defeat the purpose of the trust, and undo all the grantors intended to do in its making. If a joint estate was intended, and the mother could anticipate or alien immediately, certainly any one of the children could do likewise. Thus the property, placed in the hands of a trustee as a producing whole for a distinct purpose, could be disturbed, and that purpose overridden. We hold that the deed conveying this property to a trustee for the use and benefit, maintenance and support, of the wife and children of Beverly Tompkins, and for the purpose of making provision for his family, created a blended trust in which the interest of the beneficiaries were so inseparable that none of them could be aliened during the existence of that trust. "Where property is settled for the maintenance of a family, the expenditure must not exceed the annual income, nor can any debt contracted by the head of the family (himself only one of the *cestuis que trust*), nor by the trustee (although the profits of the trust property be pledged for their payment), be charged on the prospective profits beyond the current income, so as to deprive the beneficiaries of the support provided for them. * * * * The purpose is to protect the property against the improvidence and waste of the *cestuis que trust*, and to make that which, under their management, would have been dissipated in a short time a permanent fund, furnishing some support for the household for an indefinite period. Hence, no one of the *cestuis que trust* has any interest separable from the rest which can be charged or disposed of by him. The fund is provided for the common support of the family, and can only be enjoyed jointly." 2 Minor's Inst. (4th ed.) 227. This doctrine is supported by many cases there cited. It is, however, simply the application of sense and equity. In

Perry on Trusts, section 386a, we find it as follows: "But a trust may be so created that no interest vests in the *cestui que trust;* consequently, such interest cannot be alienated, as where property is given to trustees to be applied in their discretion; to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion. So if the property is given to trustees to be applied by them to the support of the *cestui que trust* and his family, or to . be paid over to the *cestui que trust* for the support of himself and education and maintenance of his children. In short, if a trust is created for a specific purpose, and is so limited that it is not repugnant to the rule against perpetuities and is in other respects legal, neither the trustees, nor the *cestui que trust*, nor his creditors or assignees, can divest the property from the appointed purposes. Any conveyance, whether by operation of law or by the act of any of the parties, which disappoints the purposes of the settler by divesting the property or the income from the purposes named, would be a breach of the trust. Therefore it may be said, that the power to create a trust for a specified purpose does, in some sort, impair the power to alienate property." The deed under consideration created no mere passive trust, but an active one. A simple reading of the words vouches this. And it gave to Sallie H. Tompkins no separate and distinct interest that she could incumber during the existence of this active trust, as was attempted to be done by the deed of trust to Nighbert.

The .deed did not vest an estate in the wife and children in joint tenancy. It was not a direct conveyance, but a provision for the family. The grant contains more than a mere conveyance to the wife and children. If it were simply a conveyance to wife and children, *Wills* v. *Foltz*, 61 W. Va. 262, and *Fitzpatrick* v. *Fitzpatrick*, 100 Va. 552, would apply. Then a joint estate in the wife and children *in esse* would be created. Those cases determine upon the words wife and children, without more; but in this case there is much more in the words of the deed to control in the construction of the grant. To *Wills* v. *Foltz, supra,* as reported in 12 L. R. A. (N. S.) 283, we find an eminently valuable case note, wherein we are shown that "the tendency of the courts

is to construe a devise or grant to a person and her children as constituting a life estate with a remainder to the children, and they seize hold of any indications manifest in the will to work this estate out, in order that after-born children may take under the will, and that the life tenant may have sufficient income to support the children. This construction then gives to the children as a class an estate as purchasers." Reading the deed under consideration, can we for a moment conceive that it was the intention of the grantors that it should apply only to the children *in esse* at the time? Other children were afterwards born to Beverly Tompkins and his wife. Were they to be excluded from this provision for his family? Good sense can answer this only in the negative. Yet, if we say the wife and children took jointly, subject to the trust interposing, we must deny these after-born children a share in this estate. This is not in harmony with a provision for the family. The afterborn children became at their birth members of the family. Then, what is a reasonable construction of the grant? Surely, that which will promote the inherent and manifest purpose of the grantors; and this leads us to hold that the only interest of the wife in this property was a life estate. We may well adopt the language in *Faribault* v. *Taylor*, 58 N. C. (5 Jones, Eq.) 219, wherein it is said: "The construction which would give the property to her and her present children only, as tenants in common of the absolute interest in it, is inadmissible, both because it might, by diminishing the present and immediate interest in the wife, be an inadequate support for her during her life, and because it would exclude from the benefit of the fund any children she may thereafter have. The manifest intent of the testator will be much more effectually carried out by giving to the wife a life estate, with a remainder to all the children which she now has, or may hereafter have." Does not the deed indicate an intention that the wife should take a life estate, that she may thus have the benefit of the estate, and that she may thereby rear and educate the children, who shall take the remainder at her death? Most certainly these children were not to take immediately. For them to do so would disturb the whole arrangement provided in the deed. Can we say that the mother could ab-

solutely take any portion immediately? Her so doing would likewise frustrate that arrangement. Neither was immediately vested. A trust in their favor interposed. Now, when was the property to vest absolutely? Must we not say only when the family ceased to exist, and not earlier? The arrangement is declared to be a provision for the family, and the duration of that provision must logically be co-existent with the family. When the family ceased to exist, the trust provision was to end? But when does the family cease to exist? Shall we not, in sense, say at the death of the mother—the natural guardian and head, as this arrangement presents itself? Was it not the intention simply to preserve the estate together as long as the family should be held together as only a mother can hold it? Only a life estate in the wife and mother is consistent with such intention: And no other interest in the wife is consistent with the conveyance of the land so as to be in no mode or manner liable for the debts of the husband. And this construction seems to be natural and reasonable for the carrying out of the provisions of the deed, for the letting in of after-born children, and for the making of the arrangement just that provision it was declared by the deed to be. Sallie H. Tompkins had only a life estate in the property. That life estate was subject to the trust arrangement. Through this life estate and that arrangement provision was made for the family. And that life estate was so subject to and interwoven with the trust arrangement, so necessary to the support and maintenance, use and benefit of herself and children, that she could not transfer, assign or alien it; for to permit her to do this would break up and destroy the trust created by the grantors.

The decree of the circuit court is right, and we affirm it.

*Affirmed.*