DUWAIN E. HUGHES v. EVELYN JACKSON ET AL.

No. 6372.   Decided April 24, 1935.
(81 S. W., 2d Series, 656.)

*Collins, Jackson & Snodgrass,* of San Angelo, for plaintiff in error.

Trustee could collect and use the proceeds of life insurance policy for the education of the beneficiaries thereunder, in any manner that he might approve. Thompson v. Caruthers, 92 Texas, 530, 50 S. W., 331; Sachs v. Goldberg, 159 S. W., 92; 65 C. J., 254; Crews v. Crews, 113 Ky., 152, 67 S. W., 276.

*Scarbrough, Ely & King* and *Edmund C. Yates,* of Abilene, and *Robert T. Neill,* and *C. H. Tupper, Jr.,* both of San Angelo, for defendants in error.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This suit was filed in the District Court of Tom Green County, Texas, by Evelyn Jackson, for herself, and by Mrs. Laura G. Roberts, as guardian of Una Pearl Jackson, a minor, to recover the proceeds of a policy of insurance issued upon the life of Mrs. Rue Bertha Jackson, mother of Evelyn and Una Pearl Jackson. The proceeds of such policy have been paid to Hughes, as trustee for Evelyn, Jack G. and Una Pearl Jackson. Trial in the district court resulted in a judgment for Hughes on a directed verdict. On appeal by the plaintiffs in the district court to the Court of Civil Appeals at Austin

the judgment of the district court was reversed and the cause remanded with instructions. 52 S. W. (2d) 687. Hughes brings error.

About August, 1923, Mrs. Rue Bertha Jackson was a widow with three minor children, viz:—Evelyn Jackson, Jack G. Jackson and Una Pearl Jackson. Defendant, D. E. Hughes was Mrs. Jackson's brother-in-law, having married the sister of Mrs. Jackson's deceased husband.

On August 8, 1923, Great Southern Life Insurance Company issued its policy of insurance on the life of Mrs. Jackson. This policy was for $6,000.00 and was payable to D. E. Hughes, trustee. In this connection we here quote from the policy:

"The beneficiary of this policy is Duwain E. Hughes, Trustee, for the use and benefit of Evelyn Jackson, daughter; Jack G. Jackson, son; and Una Pearl Jackson, daughter. In the event of the death of Duwain E. Hughes, Trustee, the beneficiary shall be Mrs. Pearl Jackson Sanders, Trustee, for the use and benefit of Evelyn Jackson, Jack G. Jackson and Una Pearl Jackson. Payment to the said Duwain E. Hughes, Trustee, or to Mrs. Pearl Jackson Sanders, Trustee, of the said sum insured of $6,000.00, shall discharge all obligation and liabilities from the Company hereunder."

The policy of insurance also contained the usual provisions with reference to change of beneficiary and right to assign. We here quote such provisions:

"10. CHANGE OF BENEFICIARY. The Insured may, without the consent of the beneficiary or benefiiciaries, at any time and from time to time during the continuance of this policy, provided the policy has not been assigned, change the beneficiary or beneficiaries by written notice to the Company at its Home Office, such change to take effect on the endorsement of the same on the policy by the Company. The right is reserved to the Insured, without the consent of the beneficiary, to receive every benefit, exercise every right and enjoy every privilege granted by this policy.

"If any beneficiary should die before the Insured, the interest of such beneficiary shall vest in the Insured.

"11. ASSIGNMENT. The Insured has the right to assign this policy. Any assignment must be made in duplicate, upon blanks furnished by the Company, and one original copy shall be filed with the Company at its Home Office. The Company will assume no responsibility as to the validity of any assignment. Any claim arising under an assignment shall be

subject to proof of interest. Any assignee of this policy will take same subject to any existing indebtedness against this policy, whether he has notice thereof or not, and subject to the right of the Company to make loans to cover premium payments. If any such loans are thereafter made they shall be a lien against the policy superior to any rights of said assignee."

D. E. Hughes testified that prior to the issuance of this policy he had a conversation with Mrs. Jackson; that in this conversation he and Mrs. Jackson discussed the three children of Mrs. Jackson and how they would be educated and cared for in case Mrs. Jackson should die; that he told Mrs. Jackson that some provision should be made for these children in case she should die; that he told Mrs. Jackson to take out a policy of life insurance for the children and that Mrs. Jackson said she thought that would be the thing to do.

D. E. Hughes further testified that he and Mrs. Jackson had another conversation about a month or two after this policy was issued; that he told Mrs. Jackson that he had received the policy and the way it was made; that Mrs. Jackson stated that she had made him trustee, and in case of his death had provided for Mrs. Pearl Jackson Sanders to act as trustee, and that she did this because she knew that Hughes and Mrs. Sanders would educate the children with the money.

The record further shows that Hughes acting for his wife and Mrs. Sanders, who was also a relative of Mrs. Jackson, paid all of the premiums for this insurance until Mrs. Sanders died. After that Hughes paid all of the premiums himself. No premium or part of a premium was ever paid by Mrs. Jackson.

Ira L. Cain, the District Manager of this Insurance Company, at the times here involved, testified as a witness by deposition in this case. He testified that shortly before this policy was issued he had a conversation with Hughes. We here quote the following from Cain's testimony with reference to this conversation:

"* * * He asked me to tell Mrs. Jackson that he would be willing to pay the premiums on this policy if it were to be made payable to him as Trustee for her children, to be used in any manner he might see fit for the welfare of the children, and that he was not to be under any bond or instructions from anyone, but was to use his judgment in the expenditure of the $6000.00 in case of her death."

Cain then testified:

"The nature of the trusteeship under which Mr. Hughes

was to hold the moneys paid to him was purely a verbal one, and the nature of the trusteeship is set out fully in question 4. (The above quotation is the answer to question No. 4)."

"There was an agreement between himself on the one hand and Mr. Hughes (and Mrs. Jackson on the other) that all premiums were to be paid on the policy by Mr. Hughes."
* * *

"There was an agreement between Mrs. Rue Bertha Jackson and Duwain E. Hughes through me as to the disposition that Mr. Hughes should make of the moneys. This disposition, as before stated, was to be decided absolutely by Mr. Hughes for the welfare of the children of Mrs. Jackson."

"The only agreement that was made in regard to the issuance of the policy and the disposition of the proceeds thereof was made before the policy was issued, and was suggested to me by Mr. Hughes at Mertzon, Texas. A day or two subsequently I went to Abilene, conferred with Mrs. Jackson, stated to her the suggestion made by Mr. Hughes that if she would agree to a policy being issued on her life, the beneficiary to .be himself, Duwain E. Hughes, and the proceeds of the policy to be used as he might see fit for the education and welfare of the children, that he would pay the premiums on the policy. She agreed in full to the suggestion and was examined for the life insurance policy that day."

"The policy was later issued and delivered by me to Mr. Hughes, who paid me the first annual premium. After the policy was issued there was no conference, discussion or agreement between myself and Mr. Hughes or Mrs. Jackson."

"The agreement with reference to the trusteeship of Mr. Duwain E. Hughes was that he was to use the funds from the said policy in whatever manner he might decide was the best for the welfare of the children of Mrs. Jackson. This agreement, as before stated, was made between Mr. Hughes and Mrs. Jackson through me."

It is undisputed that while the policy was for $6000.00, only $5244.00 was paid to Hughes at the death of Mrs. Jackson. The reduction was made because Mrs. Jackson had made a mistake in stating her age.

It appears that this policy of insurance was kept alive from the date of its issuance in 1923 to the time of Mrs. Jackson's death in 1928, by the payment of the premiums as above detailed. On the death of Mrs. Jackson the Insurance Company paid the amount due on the policy, $5244.00 to Hughes. At the time this suit was tried Hughes had expended $1480.00

upon the education and support of the plaintiff, Evelyn Jackson.

It further appears that after the death of Mrs. Jackson the three children above mentioned all survived her. Mrs. Roberts was appointed their guardian. Jack G. Jackson later died intestate and his two sisters above named are his sole surviving heirs. In this suit Evelyn Jackson claims one-half of the proceeds of this policy less what has been expended for her education by Hughes. Mrs. Roberts claims the other one-half as guardian for Una Pearl Jackson.

We interpret the opinion of the Court of Civil Appeals to hold:

1. That the evidence contained in this record shows as a matter of law the creation of an active trust in the proceeds of this insurance policy.

2. That by the terms of such trust D. E. Hughes was constituted trustee to handle such trust fund for the benefit and education of the three Jackson children free from any control by the probate court, or any other outside agency.

3. That at the death of Mrs. Jackson each of the three Jackson children became vested with a one-third beneficial interest in the trust fund.

4. That when Jack G. Jackson died the trust as to his one-third interest terminated, and his two surviving sisters, as his only heirs at law, became the owners thereof in fee simple, freed from the trust.

We are of the opinion that the testimony of D. E. Hughes and Ira L. Cain above detailed, together with the other facts and circumstances shown in this record, would justify conclusions 1 and 2 of the Court of Civil Appeals, supra, if found by the jury to be true, but we do not believe that it should be held that the testimony of these two witnesses must be taken as true as a matter of law.

1 In regard to the testimony of D. E. Hughes, he is an interested witness, the defendant in the suit. His testimony is in regard to conversations and transactions with Mrs. Jackson which occurred nearly eight years before the time he testified. Also his testimony is in regard to what was said between himself and a person then dead. We think the jury should have been given an opportunity to pass on the credibility of D. E. Hughes, and the weight to be given his testimony.

In regard to the testimony of the witness, Ira L. Cain, he testified to a conversation between himself and D. E. Hughes, and another conversation or transaction between himself and

Mrs. Jackson. Both of these conversations occurred nearly eight years before he testified in this case. Mrs. Jackson was dead at the time Cain testified, and plaintiffs were therefore unable to give the jury the benefit of her version of these transactions and conversations. The facts testified to by Cain, and the wording of his testimony might create the impression on the jury that he should be classed as a witness friendly to Hughes. It is not possible to lay down a hard and fast rule by which it can be determined when the testimony of a witness is taken as true as a matter of law, and when it should be held to involve an issue of fact, but we believe under the facts and circumstances of this record the jury should have been given an opportunity to pass on Cain's credibility as a witness, and the weight to be given to his testimony.

2   It is our opinion that if it should be found that this policy of insurance was issued under the facts and circumstances contended for by Hughes, then it must be held as a matter of law that an active trust was created with power in D. E. Hughes to collect this insurance policy, and with the further right and power in D. E. Hughes as trustee of such fund to handle and expend the same as he, in his sound discretion may deem right and proper, on the three Jackson children, or their survivors as a family free from the control of the probate court, or any other outside agency. We are further of the opinion that if this policy was issued under the facts and circumstances contended for by Hughes he has the right to use this fund on the Jackson children as a family, and he is not compelled to expend one-third of the fund on each child. In this connection we hold that the trustee has the right to use his own sound judgment and discretion as to how he will distribute the expenditure of this fund between the two surviving Jackson children. This was clearly the intention of the parties to the creation of the trust fund as shown by the testimony of Hughes and Cain and the other facts and circumstances of the record. Perry on Trust, Vol. 1, sec. 386a; Talley v. Ferguson, 64 W. Va., 328, 63 S. E. 456, 17 L. R. A. (N. S.) 1215. The opinion in Talley v. Ferguson, supra, quotes from Perry on Trust, supra. We think the law as there announced rules this case. We, therefore, also quote from Perry on Trust, supra, as follows:

"* * * But a trust may be so created that no interest vests in the *cestui que trust;* consequently, such interest cannot be alienated, as where property is given to trustees to be applied in their discretion to the use of a third person, no interest

goes to the third person until the trustees have exercised this discretion. So if property is given to trustees to be applied by them to the support of the *cestui que trust* and his family, or to be paid over to the *cestui que trust* for the support of himself and the education and maintenance of his children. In short, if a trust is created for a specific purpose, and is so limited that it is not repugnant to the rule against perpetuities and is in other respects legal, neither the trustees, nor the *cestui que trust,* nor his creditors or assignees, can divest the property from the appointed purposes. Any conveyance, whether by operation of law or by the act of any of the parties, which disappoints the purposes of the settlor by divesting the property of the income from the purposes named, would be a breach of the trust. Therefore it may be said, that the power to create a trust for a specified purpose does, in some sort, impair the power to alienate property."

Except as indicated above we approve and adopt the holdings of the Court of Civil Appeals.

The judgments of the Court of Civil Appeals and district court are both reversed and the cause remanded to the district court for a new trial in accordance with this opinion.

Opinion adopted by the Supreme Court April 24, 1935.