**In re Homer Charles WILSON and wife, Nancy Lou Wilson, Debtors.**

**Homer Charles WILSON and wife, Nancy Lou Wilson, Plaintiffs,**

**v.**

**UNITED STATES of America (INTERNAL REVENUE SERVICE), Defendant.**

**Bankruptcy No. 591–50207–7.**

**Adv. No. 591–5031.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

May 26, 1992.

Myrtle McDonald, Jones, Flygare, Galey, Brown & Wharton, Lubbock, Tex., for debtors.

Ralph F. Shilling, Jr., Trial Atty., Tax Div., U.S. Dept. of Justice, Dallas, Tex., for I.R.S.

### MEMORANDUM OF OPINION ON PROPERTY RIGHTS IN A DISCRETIONARY TRUST

JOHN C. AKARD, Bankruptcy Judge.

The Internal Revenue Service (IRS) seeks to levy against discretionary disbursements from a testamentary spendthrift trust established for Nancy Lou Wilson (Debtor/Beneficiary). The court finds that the Debtor/Beneficiary does not have a property interest in the trust under Texas law. Therefore, a federal tax lien pursuant to 26 U.S.C. § 6321 [hereinafter IRC § 6321] cannot attach to the trust and the

trust cannot be levied against under 26 U.S.C. § 6331 [hereinafter IRC § 6331].

## FACTS

In her will, Louisa Huval (Settlor or Mrs. Huval) established the Louisa Huval Testamentary Trust (Huval Trust). Her daughter, Nancy Lou Wilson, is one of four beneficiaries. The Plains National Bank of Lubbock (Trustee) is Trustee of the Huval Trust. The Huval Trust provides for distributions to the Debtor/Beneficiary, in ¶ 2:

2. (a) The net income of "THE LOUISA HUVAL ESTATE TRUST" shall be distributed as follows:

(1) My Trustee, in its sole discretion, may distribute sixty (60%) percent of the income to or for the benefit of my daughter, NANCY LOU WILSON; provided, however, any part or all of such income that is not distributed shall be accumulated for the benefit of my daughter, NANCY LOU WILSON, and my Trustee shall have the sole discretion to distribute all or any part of such accumulated income to or for the benefit of my daughter at such time or times as my Trustee determines to be in the best interest of my daughter. Any income and/or accumulated income not distributed at the date of my daughter's death shall be distributed to her descendants.

. . . .

(c) "THE LOUISE HUVAL ESTATE TRUST" shall terminate at the death of my daughter, NANCY LOU WILSON, or twenty (20) years after my death, whichever date is later, and the entire trust estate shall be distributed to my then surviving grandchildren, share and share alike. . . .

The Huval Trust also contains a spendthrift clause in ¶ 6 which provides:

6. No part of any trust estate, under any circumstances, shall ever be liable for or charged with any of the debts, liabilities, or obligations of the beneficiary or subject to seizure by any claimant or creditor of the beneficiary. The beneficiary, under any circumstances, shall not have the power to assign, convey, pledge, charge or otherwise encumber or in any manner anticipate or dispose of his or her interest in any trust estate until the same shall have been actually transferred, conveyed or paid over to him or her, free and clear of such trust.

The IRS filed a tax lien against Homer Charles Wilson and Nancy Lou Wilson (Debtors) for $595,466.92 plus interest. On April 20, 1990 and again on November 26, 1990, the IRS served notice of levy on the Trustee attempting to encumber the Huval Trust in order to secure payment of federal taxes owed by the Debtors. After the IRS notified the Debtor/Beneficiary of its claims, the Trustee exercised discretion to accumulate the trust income and disbursed nothing to the Debtor/Beneficiary.

In the Joint Pretrial Order the parties agreed that the Debtors' federal income taxes for the years 1979, 1980, 1982, and 1986 were dischargeable, that they had no federal income tax liability for the years 1981, 1983, 1984, 1985, 1987, and 1989, and that the Debtor's federal tax liability for the years 1988 and 1990 was not dischargeable.

## *Issue*

■■■ The Debtors filed this adversary proceeding pursuant to Fed.R.Bankr.P. 7001 [1] to determine the dischargeability of several tax obligations under §§ 507(a)(7) and 523 of the Bankruptcy Code [2]. Although the parties agreed that the tax liability for the years 1979, 1980, 1982, and 1986 is dischargeable, a discharge in bankruptcy only extinguishes the debtor's personal liability. § 524(a)(1). A bankruptcy

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(I) and (K).

2. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

discharge does not prevent enforcement of valid tax liens. § 522(c)(2)(B). Discharged taxes can be collected from exempt assets. S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News p. 5787. Thus, a total of six tax years could be subject to liens—the four discharged years, and the two nondischarged years.

■ Therefore, the only issue remaining is whether the Debtor/Beneficiary had either property or rights to property in the withheld discretionary disbursements from the spendthrift Huval Trust to which an IRC § 6321[3] federal tax lien could attach and a subsequent IRC § 6331[4] levy could be applied in order to satisfy the tax liabilities for the six unpaid years.

### Position of the Parties

The Debtors argue that the IRS lien was invalid because, under the language of the trust instrument, the Trustee was invested with purely discretionary powers over income payments to the Debtor/Beneficiary. Therefore, the Debtor/Beneficiary did not have an interest in income payments rising to the level of a property right for purposes of a federal tax lien, but had only a mere expectancy in trust disbursements.

The IRS concedes that, where a beneficiary is entitled only to receive so much trust property as the trustee in his discretion decides to give, the beneficiary cannot compel the trustee to pay anything to, or on behalf of, the beneficiary. In such an instance, the beneficiary's creditors cannot reach the trust corpus. However, the IRS argues that a trustee can abuse the discretion given him under a discretionary trust and, in such a case, the court may compel compliance with trust terms. According to the IRS, the power to compel distribution is a property right to which a federal tax lien could attach.

Additionally, the IRS asserts that its lien made it a co-owner of the Debtor/Beneficiary's interest in the trust. By reason of this co-ownership, the IRS insists that it can now levy on the Trustee to enforce the Debtor/Beneficiary's (and now its own) interest in trust distributions. Furthermore, the IRS claims that the federal tax levy establishes a custodial relationship between the Trustee and the IRS. Therefore, the IRS is the proper recipient of future trust distributions.

### DISCUSSION

#### State Law Controls

■ It is well established, and conceded by the parties in this case, that the IRS must look to state law to determine which legal rights and interests constitute "property" or "rights to property" with respect to a federal tax lien. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). The *Aquilino* Court wrote:

> The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer has 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute.' *Aquilino,* 363 U.S. at 512–13 [80 S.Ct. at 1280] (footnote omitted) (quoting *Morgan v. Commissioner,* 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940)).

Once state-created property rights are determined to exist, then the court must turn to federal law to answer whether the state-law right constitutes "property" or "rights to property." *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 727, 105 S.Ct. 2919, 2927, 86 L.Ed.2d 565 (1985) (citing *United States v. Bess,* 357 U.S. 51, 56–57,

---

**3.** IRC § 6321 provides that a lien can attach to "property and rights to property" for unpaid federal taxes.

**4.** IRC § 6331 gives the IRS the power to levy against the debtor's "property or rights to property."

78 S.Ct. 1054, 1057–58, 2 L.Ed.2d 1135 (1958)); *Randall v. H. Nakashima & Co.*, 542 F.2d 270, 273 (5th Cir.1976).

### The Huval Trust Corpus

■ The Huval Trust corpus is to be distributed to the Settlor's grandchildren either twenty years after the Settlor's death or upon the death of the Debtor/Beneficiary, whichever event is later. (Huval Trust, *supra,* ¶ 2(c)). The Debtor/Beneficiary is the Settlor's daughter. Since the trust corpus is never to go to the Debtor/Beneficiary, the court finds that she has no property or right to property therein. *See United States v. Dallas Nat'l Bank*, 152 F.2d 582, 584–585 (5th Cir.1945). The IRS conceded this point.

### Discretionary Trusts in Texas

■ Unlike the trust corpus, the income from the Huval Trust was designated for distribution to the Debtor/Beneficiary subject to the Trustee's discretion. A discretionary trust is one "[w]here by the terms of the trust a beneficiary is entitled only to so much of the income or principal as the trustee in his uncontrolled discretion shall see fit to give him, [and] he (the beneficiary) cannot compel the trustee to pay him or to apply for his use any part of the trust property." AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 155 at 152 (4th ed. 1987) (hereinafter SCOTT ON TRUSTS). Also, with discretionary trusts, no standard or guide is affixed to the trustee's distribution power. *See* GEORGE G. BOGERT & GEORGE T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 228 at 508 (rev. 2nd ed. 1979) (hereinafter BOGERT ON TRUSTS). Discretionary trusts are similar in effect to a spendthrift trust in that where a trustee has been invested with a discretionary power to give an interest in a trust fund to a named beneficiary, the beneficiary cannot alienate the funds nor can creditors reach the funds until the trustee's discretion has been exercised. *Hughes v. Jackson*, 125 Tex. 130, 81 S.W.2d 656, 659 (Comm'n App.1935, opinion adopted); 72 Tex.Jur.3d *Trusts* § 37 (1990).

■ The income provision of the Huval Trust meets these definitions. The disbursement clause states that the Trustee *may* either distribute or accumulate 60% of the trust income according to its *sole* discretion. (Huval Trust, *supra* ¶ 2(a)(1)). The Debtor/Beneficiary cannot compel distributions by virtue of the Trustee's purely discretionary disbursement power. *Id.* No standard or guide is attached to the Trustee's power. *Id.*

■ Where discretionary trusts are created for the benefit of persons, the extent of the beneficiary's interest depends upon the terms of the trust. The Texas Commission of Appeals, in an opinion adopted by the Texas Supreme Court, held that a beneficiary has no interest in a discretionary trust. *Hughes*, 81 S.W.2d at 659. The *Hughes* Court cited with approval the rule stated in 1 JAIRUS W. PERRY, TREATISE ON TRUSTS AND TRUSTEES § 386a at 555 (5th ed. 1899).

> But a trust may be so created that no interest vests in the *cestui que trust;* consequently, such interest cannot be alienated, as where property is given to trustees to be applied in their discretion to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion.

SCOTT ON TRUSTS states the rule more succinctly: "[t]he interest of the beneficiary in the income [from a discretionary trust] is exempt from the claims of his creditors until it is actually paid over by the trustee to the beneficiary." SCOTT ON TRUSTS, *supra* § 152.5 at 123. Where discretionary trusts are involved, the beneficiary has no right to trust income until the trustee elects to irrevocably and unconditionally place it in the beneficiary's control. *Commissioner v. Porter*, 148 F.2d 566 (5th Cir. 1945); *Hay v. United States*, 263 F.Supp. 813, 821 (N.D.Tex.1962). Since in the case at bar no income was allocated for or paid to the Debtor/Beneficiary, the trust income remains exempt from the claims of creditors. SCOTT ON TRUSTS, *supra* § 152.2. at 108.

### Compelled Distributions

■ The IRS asserts that it can compel the Trustee to disburse funds to the

Debtor/Beneficiary. The court finds it cannot. Courts are limited in their powers over the trustee of a discretionary trust. No interference is allowed with a trustee regarding the exercise of his discretionary powers unless abuse of that discretion is plead and proven. *Brown v. Scherck*, 393 S.W.2d 172 (Tex.Civ.App.—Corpus Christi 1965, no writ); 72 Tex.Jur.3d *Trusts* § 58 (1990). The reviewing court cannot substitute its discretion for that of the trustee and can interfere with the exercise of discretionary powers only in cases of fraud, misconduct, or clear abuse of discretion. *Coffee v. William Marsh Rice Univ.*, 408 S.W.2d 269, (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.). No party alleged Trustee fraud or misconduct nor are there allegations that the Trustee abused its unfettered discretion regarding the distribution of the income from the Huval Trust.

█ Texas courts can compel the distribution of trust funds to effectuate the settlor's intent. When the settlor includes a support provision in the trust, courts uphold that intent and compel distribution using the fraud, misconduct and abuse of discretion standard. *State v. Rubion*, 158 Tex. 43, 308 S.W.2d 4 (1957) (holding that the support and maintenance standard required distributions to pay for inmate care of the beneficiary in State Hospital).

The IRS cited two cases in support of its position to compel distribution. It first cited *United States v. Dallas Nat'l Bank*, 152 F.2d 582 (5th Cir.1945) which held that an IRS levy was appropriate where a trust distribution was made pursuant to a support provision coupled with a spendthrift clause. The distributions were *mandatory* disbursements made from the net revenues generated from property located between Akard and Stone Streets in Dallas, Texas. The court held that *after* they became payable to the beneficiary, the distributions were property subject to lien and levy by the IRS for unpaid taxes. The *Dallas* case is distinguishable; in the case at hand the Trustee is *not* required to distribute the income to the Beneficiary and, in fact, no disbursements were made to the Debtor/Beneficiary. Therefore the Debtor/Beneficiary has no property to which the IRS lien can attach.

The second case offered as authority for the IRS's position is an unpublished Northern District of Texas opinion, Wright v. United States, No. CA3-88-2655-D (N.D.Tex. filed Aug. 11, 1989). That case addressed the opposite side of the *Dallas* issue, *i.e.*, a discretionary trust that did *not* contain a spendthrift clause. The district court found that the beneficiary did have an interest in the discretionary trust distributions that equated to property and, therefore, the IRS could lawfully attach the proceeds. In Wright, the beneficiary received 50% of the income and corpus from a testamentary trust. That share was to be "retained in a [discretionary] trust named for him." The disbursements of that trust were subject to the trustee's sole discretion pursuant to a standard.[5] The facts do not indicate that the trust instrument contained a spendthrift clause. The Wright court determined "from the structure of the [trust] instrument itself ... that Mrs. Wright intended to establish an equitable property interest in John [the beneficiary]." Wright at 6.

Unpublished opinions are precedent in the Fifth Circuit. FED.R.APP.P. 47, 5th Cir. R. 47.5.3. However, the precedential value of the Wright case is limited. Wright does not cite the closest case on point, *Hughes v. Jackson*, 125 Tex. 130, 81 S.W.2d 656 (Comm'n App.1935, opinion adopted). Wright can also be distinguished on the facts of the case. The Wright trust directed 50% of all trust income and corpus to the discretionary distribution fund, but established a standard for distribution from

---

5. "From and after my death and during John's lifetime, the Trustee *may* pay to JOHN or for his benefit so much or all of the income and principal of the trust named for him at such time or time as the Trustee, in the Trustee's *sole discretion*, believes desirable for the comfortable maintenance, health, education (including college and graduate or professional or vocational school education), best interests and welfare of JOHN and his children dependent on him for support, considering all circumstances and factors the Trustee believes pertinent. (Emphasis added)." Wright at 3.

the fund. The Huval Trust directed 60% of the trust *income* only, subject to the Trustee's sole discretion, for distribution to the Debtor/Beneficiary *or* retention and later payment to Mrs. Huval's grandchildren. (Huval Trust ¶ 2(a)(1), (2(c)). The beneficiaries of the Wright trust eventually received the discretionary trust funds. However, if distributions are perpetually withheld, the Debtor/Beneficiary will never receive income from the Huval Trust (Huval Trust ¶ 2(c)). Therefore, the Debtor/Beneficiary will never have an interest in the trust. Unlike the Wright case, the Huval Trust also contains a spendthrift clause preventing alienation of undisbursed funds, (Huval Trust, *supra,* ¶ 6).

### Spendthrift Trusts

A trust which contains an inalienability clause is a spendthrift trust. Spendthrift trusts are those in which the right of the beneficiary to payments is not alienable by him or subject to collection for his debts. BOGERT ON TRUSTS, *supra* § 221 at 375. Spendthrift trusts are valid in Texas. *Hines v. Sands,* 312 S.W.2d 275 (Tex. Civ.App.—Fort Worth 1958, no writ); *Porter,* 148 F.2d at 568; *Hoffman v. Rose,* 217 S.W. 424, (Tex.Civ.App.—Austin 1919, *writ ref'd* ). The Texas legislature codified its support of spendthrift trusts in Tex.Prop. Code Ann. § 112.035(a) (Vernon 1984) which provides:

(a) A settlor may provide in the terms of the trust that the interest of a beneficiary in the income or in the principal or in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.

Spendthrift trusts in Texas are exceptions to the general rule that alienability and liability of an estate for its owner's debts are incidents of ownership. *Hines,* 312 S.W.2d at 275; *Long v. Long,* 252 S.W.2d 235 (Tex.Civ.App.—Texarkana 1952, writ ref'd n.r.e.). Immunity of the trust fund from liability for the beneficiary's debts and inalienability of funds are necessary incidents of a spendthrift trust. *Long,* 252 S.W.2d at 246. Neither the corpus nor the income of spendthrift trusts are subject to the claims of creditors while in the hands of the trustee. 72 Tex.Jur.3d, *Trusts* § 41 (1990). The Huval Trust contains a spendthrift clause which entitles the Debtor/Beneficiary to protection from creditors. (Huval Trust, *supra,* ¶ 6).

### Trust Purposes

"Spendthrift and similar protective trusts are not sustained out of consideration for the beneficiary; their justification is found in the right of the settlor to control his or her bounty and secure its application according to his or her pleasure." 72 Tex.Jur.3d, *Trusts* § 37 (1990) (citing *Hines v. Sands,* 312 S.W.2d 275 (Tex.Civ. App.—Ft. Worth 1958, no writ)). Trust instruments should be interpreted so as to ascertain and effectuate the intentions of the parties. *Bradford v. Rain,* 562 S.W.2d 514, 517 (Tex.Civ.App.—Texarkana 1978, no writ). Where a trust instrument confers upon a trustee powers, the trustee is entitled to exercise those powers only within the construction which the maker intended. *Beaty v. Bales,* 677 S.W.2d 750 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.); *Williams v. Smith,* 146 Tex. 269, 206 S.W.2d 208 (1947).

## CONCLUSION

Looking at the terms of the Huval Trust so as to ascertain and effectuate the intent of the Settlor, it is clear to this court Mrs. Huval did not intend trust fund income distributions to go to her daughter's creditors. As a mother, Mrs. Huval wanted to provide for her daughter but, apparently, she had concerns about her daughter's financial abilities. So she chose two methods, each well recognized and established under Texas law, to protect her daughter from improvidence. First, she established a trust in which the Trustee has absolute discretion in the distribution of available funds. The Trustee could either withhold funds or pay them for the benefit of the Debtor/Beneficiary. The Trustee is not required to pay funds directly to the Debtor/Beneficiary. Mrs. Huval specifically provided that any income and/or accumulated income not distributed at the date of [the Debtor/Beneficiary's] death shall be

distributed to her descendants. This is a clear statement that the Trustee is not obligated to distribute anything to the Debtor/Beneficiary during her lifetime. Both parties agree that where a beneficiary is entitled only to so much of the trust property as the trustee in its uncontrolled discretion decides to give to the beneficiary, the beneficiary cannot compel the trustee to pay anything to or on behalf of the beneficiary and there is no property right to which an IRS lien might attach. The court finds that is the case with the Huval Trust.

Second, Mrs. Huval specifically directed in the spendthrift clause that no part of trust estate, under any circumstances, should ever be liable for or charged with any of the debts, liabilities, or obligations of the beneficiary or subject to seizure by any claimant or creditor of the beneficiary. Spendthrift clauses are well recognized in Texas as a method of preventing creditors from reaching any part of a trust. To allow the IRS to reach any part of the trust in question would frustrate Mrs. Huval's intentions and deprive the residual beneficiaries of what is rightfully theirs.

At this time there is no property to which an IRS lien may attach. The Debtor/Beneficiary cannot compel distributions. Therefore there will be no property in the future against which the IRS may place a lien. The IRS must await a distribution from the Trustee.[6] The Debtor/Beneficiary will not have an interest subject to an IRC § 6321 lien until the Trustee elects to irrevocably and unconditionally place the funds under her control. *Commissioner v. Porter*, 148 F.2d 566 (5th Cir.1945). Therefore, the IRS's action will be proper only against the Debtor/Beneficiary once the funds are in her hands, not against the Trustee or the Huval Trust.

ORDER ACCORDINGLY.[7]

---

**6.** The parties have not cited, nor has the court located, any authority requiring the Trustee to notify the IRS when it makes a distribution.

**7.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. This Memorandum will be published.