**TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Trustee, Plaintiff,**

v.

**The UNITED STATES of America, et al., Defendants.**

**Civ. A. No. H–94–0860.**

United States District Court, S.D. Texas, Houston Division.

Oct. 31, 1995.

---

454

D. Mitchell McFarland, Liddell Sapp Zivley Hill & Laboon, Houston, TX, for plaintiff.

Michael D. Powell, Dept. of Justice, Dallas, TX, for U.S.

George William Connelly, Linda S. Paine, Chamberlain Hrdlicka White Williams & Martin, Houston, TX, for Ellanor Ann Fondren.

James E. Myers, Andrews & Kurth, Houston, TX, for Doris Fondren Allday, Walter W. Fondren, III, Camille Fondren Habermacher, Robert Edwin Allday, Walter Fondren Allday, Jeanette Ann Allday, Ellanor Allday Beard, Joseph Scott Allday, Mary Frances F. Hanson, Walter W. Fondren, IV, Leland Thomas Fondren, Robert E. Fondren, Marie Fondren Hall, Catherin Camille S. Landry, Michael Wayne Springer, David Charles Springer, Carol Lynn Habermacher, Fondren Foundation.

J. Stephen Green, Conroe, TX, for James M.P. Springer, Jr.

### *MEMORANDUM AND ORDER*

HARMON, District Judge.

Pending before the Court is plaintiff Texas Commerce Bank National Association, Trustee's ("Texas Commerce") Motion for Partial Summary Judgment (Instrument # 27) and defendant United States of America's Cross Motion for Partial Summary Judgment (Instrument # 29). Defendant Ellanor Ann Fondren ("Elly") has filed a response to Texas Commerce's motion in which she states that she concurs with Texas Commerce's requested relief. Instrument # 30, 1. This case arises out of a levy placed on a trust to which Elly is a beneficiary by the United States to recover past income tax liability of Elly. After considering the parties' submissions and the applicable law, the Court concludes that Texas Commerce's motion should be **GRANTED** and that the United States's motion should be **DENIED.**

In May 1982, Ella F. Fondren died leaving a will which established a residuary trust for each of her grandchildren. Texas Commerce was named as the trustee of the trust. The trust was originally established to provide a payment to charities selected by Texas Commerce in the amount of five percent per year of the trust's fair market value on the date of Ella F. Fondren's death for twenty years and six months. At the end of this period, the income of the trust was to be accumulated and retained by the trustee who was permitted to distribute to certain individuals such amounts of the trust as, in the sole discretion of the trustee, may be in the best interests of such distributees. The will also provided that at the end of the twenty years and six months, the net income from the trust was to be paid to Elly. Additionally, paragraph 23 of the will contained a spendthrift provision whereby none of the beneficiaries' creditors could reach the trust and none of the beneficiaries could dispose of their interests in the trust until it was actually distributed.

In September 1991, Elly petitioned the Probate Court of Harris County, Texas to modify the trust. On June 26, 1992, the Probate Court entered a judgment which did so. The modification permitted Texas Commerce to make a commutation distribution to charities equal to the present value of the remaining payments of the charitable annuity and authorized Texas Commerce to make payments from the estate of the trust until November 3, 2002 (the date that is twenty years and six months after Ella F. Fondren's death) to Elly in its "sole discretion," as may be in Elly's best interests. Additionally, the judgment provided that after November 3, 2002, the income of the trust is to be distributed at least annually to Elly and the trustee can also distribute to any one or more of the members of a class of persons composed of Elly, her husband, her issue, and the spouse of such issue such amounts from the trust estate as, in the sole discretion of the trustee, may be in the best interests of Elly, her husband, her issue, and the spouses of such issue.

In the early 1990s, the Internal Revenue Service ("IRS") assessed over $7 million against Elly for past income taxes, penalties, and interest. On June 21, 1993, the IRS served a Notice of Levy in the amount of $6,943,909.15 to Texas Commerce pursuant to section 6331 of the Internal Revenue Code ("IRC") (26 U.S.C. § 6331). This section of the code empowers the IRS to levy upon non-exempt property of a delinquent taxpayer. Section 6332(a) of the IRC further empowers the IRS to demand surrender from "any person in possession of (or obligated with respect to) property or rights to property subject to levy."

Texas Commerce concluded that it held no property or rights to property belonging to Elly on the date of the levy so the levy was wrongful and Texas Commerce was not required to turn over funds in the trust. Texas Commerce also did not believe it would be liable for any subsequent distributions made from the trust to Elly. Based on this, Texas Commerce distributed $51,966.22 to Elly in June 1993, $39,500.00 in August 1993, and $38,500.00 in October 1993.

Texas Commerce filed this action in March 1994 in order to obtain a declaration that the IRS's levy on the trust was wrongful and to obtain an injunction against the IRS from staying enforcement of the levy. The IRS filed a counterclaim against Texas Commerce contending that Texas Commerce failed to honor the levy and is consequently liable under section 6332(d)(1) of the IRC for the value of Elly's property interest in the trust and under section 6332(d)(2) for a penalty in the amount of fifty percent of the money distributed to Elly after the levy. *See* Instrument # 7, 4–7.

Texas Commerce filed its motion for partial summary judgment on the basis that Elly had no property interest in the trust on the date of the levy so the levy was wrongful. In response, the United States filed its motion for summary judgment contending that Elly does own a property interest in the trust corpus to which the IRS's levy attached. Based on this, the United States claims Texas Commerce is liable under section 6332 for at least the amount of the distributions made to Elly after the date of the levy.

Rule 56(c) of the Federal Rules of Civil Procedure provides that "summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The moving party has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). The burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact, rather "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

The IRS is authorized by section 6331(a) of the IRC to "levy upon all property and rights to property ... belonging to" a delinquent taxpayer. In asserting its federal tax lien, the IRS must look to state law for a determination of what legal rights and interests, if any, comprise "property and rights to property" to be attached. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). State law controls in determining the nature of the legal interest which the taxpayer has in the property sought to be reached by the lien. *Id.* at 512–13, 80 S.Ct. at 1279–80. Therefore, the threshold issue to be resolved is whether under Texas law Elly had a property interest in the trust on the date of the levy. This is a purely legal issue that can resolved on summary judgment grounds.


The United States argues that when all the rights that Elly has with regard to the trust are considered, she has a property interest in the trust to which the IRS's levy could attach. There are essentially four possible "interests" that Elly has in this case which might be considered a "property interest" to which the IRS's levy could attach. The first is the interest that Elly has in the trust itself since she is entitled to discretionary payments from the trust estate. The second is the right Elly currently possesses to receive payments from the trust estate in the trustee's discretion. The third is the type of right that Elly has to receive the income payments from the trust on a yearly basis after November 3, 2002. The fourth is Elly's right to receive payments in the trustee's discretion from the trust estate after November 3, 2002.

The trust in this case is a discretionary spendthrift trust. Trusts with language prohibiting the voluntary or involuntary alienation of the beneficial interest in the trust are considered "spendthrift trusts." A spendthrift trust provides direct protection from creditors of a beneficiary by expressly forbidding alienation of the beneficiary's interest in the trust. *In re Shurley,* 171 B.R. 769, 780 (Bankr.W.D.Tex.1994) (citing Restatement (Second) of Trusts § 152 (1959); Scott on Trusts § 152; George C. Bogert & George T. Bogert, The Law of Trusts and Trustees § 222 (2d ed. rev. 1992)). Trusts that grant a trustee uncontrolled discretion to distribute or not to distribute trust income or corpus are considered "discretionary trusts." *In re Shurley,* 171 B.R. at 780. A discretionary trust provides indirect protection from creditor attachment by placing responsibility for alienation of the trust assets with the trustee. *Id.* As in most jurisdictions, spendthrift trusts are valid in Texas. *Hines v. Sands,* 312 S.W.2d 275 (Tex.Civ. App.—Fort Worth 1958, no writ). This has even been codified in section 112.035(a) of the Texas Property Code which provides that:

> A settlor may provide in the terms of the trust that the interest of a beneficiary in the income or in the principal or in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.

Tex.Prop.Code Ann. § 112.035(a) (Vernon 1995). "Spendthrift and similar protective trusts are not sustained out of consideration for the beneficiary; their justification is found in the right of the settlor to control his or her bounty and secure its application according to his or her pleasure." *In re Wilson,* 140 B.R. 400, 406 (Bankr.N.D.Tex.1992) (quoting 72 Tex.Jur.3d § 37 (1990) (citing *Hines,* 312 S.W.2d 275)).

The main dispute between the parties in this case is whether Elly can be said to have a property interest in the discretionary spendthrift trust. The parties have presented what appears to be all the case law on the subject matter in Texas. The United States principally relies on an unpublished Memorandum Opinion and Order issued by the Honorable Sidney Fitzwater in *Wright v. United States,* No. 88–2655 (N.D.Tex. Aug. 11, 1989) (copy attached to Instrument # 29). Texas Commerce and Elly rely on *In re Wilson,* 140 B.R. 400 (Bankr.N.D.Tex.1992) and *Hughes v. Jackson,* 125 Tex. 130, 81 S.W.2d 656 (1935).

In *Wright* the IRS served notice of a levy on the trustee of a discretionary spendthrift trust to recover federal taxes owed by the beneficiary of the trust. The court concluded that the beneficiary had a contingent interest in the trust, rather than a mere expectancy, because the language of the trust made it clear that the settlor intended the beneficiary taxpayer to ultimately receive fifty percent of the trust. *Wright,* Memorandum Opinion and Order, at 6. Therefore, the court found that the beneficiary had a property interest under Texas law that could be considered "property" or "rights to property" under federal law.[1] *Id.*

1. It should be noted, however, that the trust at issue in *Wright* was actually a support trust to meet the beneficiary's "comfortable maintenance, health, education (including college and graduate or professional or vocational school education), best interests and welfare ..." *Id.* at 3 n. 2. This is an important difference from the trust at issue in the instant case because "[i]n a "support trust," the beneficiary has [the] right to receive so much of the trust income or principal as is necessary for his education or support...." *In re Shurley,* 171 B.R. at 780 n. 6. In a true

at 7. The United States urges the Court to follow *Wright* and hold that Elly had a property right in the trust.

In *Hughes v. Jackson,* the Texas Supreme Court [2] stated that "... [b]ut a trust may be so created that no interest vests in the cestui que trust [the beneficiary of the trust]." *Hughes,* 81 S.W.2d at 659. "Consequently such interest cannot be alienated, as where property is given to trustees to be applied, in their discretion, to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion." *Id.* This language strongly supports Texas Commerce's position that Elly has no right in the trust.

Much like the instant case, *In re Wilson* involved whether a tax lien could be placed on a beneficiary's interest in a discretionary spendthrift trust in Texas. The bankruptcy court concluded that the beneficiary had no interest in the discretionary income payments until they were disbursed. *In re Wilson,* 140 B.R. at 406–7. Furthermore, the bankruptcy court found that the IRS could not reach any part of the trust because it would frustrate the purpose of the spendthrift clause. The bankruptcy court, therefore, concluded that there was no property of the beneficiary's to which the IRS could attach a lien.

In *In re Wilson,* the bankruptcy court stated that "[d]iscretionary trusts are similar in effect to a spendthrift trust in that where a trustee has been invested with discretionary power to give an interest in a trust fund to named beneficiary, the named beneficiary cannot alienate the funds nor can creditors reach the funds until the trustee's discretion has been exercised." *In re Wilson,* 140 B.R. at 404 (citing *Hughes v. Jackson,* 81 S.W.2d at 659). "Where discretionary trusts are created for the benefit of persons, the extent of the beneficiary's interest depends upon the terms of the trust." *In re Wilson,* 140 B.R. at 404. The bankruptcy court went on to quote from *Hughes* that a beneficiary has no interest in a discretionary trust. *Id.* "Where discretionary trusts are involved, the beneficiary has no right to trust income until the trustee elects to irrevocably and unconditionally place it in the beneficiary's control." *Id.* (citing *Commissioner v. Porter,* 148 F.2d 566 (5th Cir.1945)).

The United States argues that *Hughes* and *In re Wilson* should be disregarded. The United States contends that the language in *Hughes* is merely dicta which has no precedential value. *See State v. Valmont Plantations,* 346 S.W.2d 853, 879 (Tex.Civ.App.—San Antonio 1961), *aff'd sub nom. Valmont Plantations v. State,* 163 Tex. 381, 355 S.W.2d 502 (1962). Since *In re Wilson* relies on *Hughes,* the United States argues that *In re Wilson* should also be disregarded.

The issue presented before the Texas Supreme Court in *Hughes* primarily concerned the credibility of certain witnesses' testimony being a question for the jury. *Hughes,* 81 S.W.2d at 658. However, the statement by the Supreme Court in *Hughes* that no interest vests in the beneficiary of a discretionary trust appears to be the only reference by the Texas Supreme Court on the issue. Additionally, several other courts have indicated that such a position is the law in Texas. *See Arrington v. United States,* 34 Fed.Cl. 144, 149–50 (Cl.Ct.95); *In re Shurley,* 171 B.R. 769 (Bankr.W.D.Tex.1994); *In re Wilson,* 140 B.R. 400, 404 (Bankr.N.D.Tex.1992); *Van Hoose v. Moore,* 441 S.W.2d 597, 613–14 (Tex.Civ.App.—Amarillo 1969, writ ref'd n.r.e.). The *Wright* decision, however, does not even mention *Hughes.* Rather, the district court focused on the broad definition of "property" under section 111.004(12) of the Texas Property Code and held that the beneficiary had a vested interest in the equitable title to the trust property.

Since the *Wright* opinion does not discuss the Texas Supreme Court's opinion in *Hughes* and it is not binding on this Court, the Court declines to follow *Wright.* Therefore, to the extent that Elly was entitled to

discretionary trust, such as that in the instant case, "the beneficiary has no right to receive trust income or principal—the trustee has sole and absolute discretion." *Id.* (emphasis added).

2. *Hughes* is actually a Texas Commission of Appeals opinion. The Texas Supreme Court adopted the opinion which means the opinion has the fully authority of a Texas Supreme Court decision.

wholly discretionary distributions from the trust in June 1993, there was no interest to which the IRS's levy could attach.

■ This conclusion only applies to the rights that Elly had to discretionary disbursements, including the discretionary disbursements of the trust estate after November 3, 2002. Whether Elly had an interest that could be levied on since she is entitled to mandatory income disbursements at least yearly beginning November 3, 2002 must also be addressed.

■ The IRS's regulations provide that "a levy extends only to property possessed and obligations which exist at the time of the levy." 26 C.F.R. § 301.6331–1(a). "Obligations exist when the liability of the obligor [the trustee in the instant case] is fixed and determinable although the right to receive payment thereof may be deferred until a later date." *Id.* "[A]n IRS levy will not reach a taxpayer's claim to receive payments in the future where the taxpayer does not, at the time of the levy, have a fixed and determinable right to those payments." *In re Hawn*, 149 B.R. 450, 457 (Bankr.S.D.Tex. 1993). "For example, the IRS has ruled that a levy will not reach unvested, contingent rights to future payments." *Id.* (citing Rev. Rul. 75–554, 1975–2 C.B. 478).

In the instant case, although Elly is required to be paid the income from the trust after November 3, 2002 on at least a yearly basis, she certainly does not have a vested right to any payments. Only if there is income will she be paid. The IRS levied on the trust over nine years before Elly would receive any of the mandatory income distributions. By November 3, 2002, the trust estate may no longer be in existence. There may not be any income. The trustee may decide to exercise its discretion after November 3, 2002 to disburse the entire trust estate after November 3, 2002 to Elly, her husband, her issue, or the spouses of such issue. Since Elly's right to receive income payments after November 3, 2002 is clearly a contingent, non-vested, and non-determinable right, the IRS's levy in June 1993 could not reach it.

Based on the foregoing, the Court concludes that the Elly had no interest in the trust on which the IRS could levy in June 1993. Consequently, the IRS's levy was wrongful and the subsequent distributions made to Elly by Texas Commerce were not in violation of the levy. Accordingly, the Court

**ORDERS** that Texas Commerce's motion for partial summary judgment is **GRANTED**, and

**ORDERS** that the United States's motion for partial summary judgment is **DENIED**.